UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JAVONE BROWN,

                Plaintiff,

        -against-

CITY OF NEW YORK, et al.,

                Defendants.

------------------------------------------------------------x

No. 20-cv-10846 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/14/23

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

McMahon, J.

    Plaintiff Javone Brown ("Plaintiff") brings this action under 42 U.S.C. §§ 1983 and 1988 against the City of New York ("City"), the New York City Police Department ("NYPD"), and six anonymous individuals employed by the NYPD ("Individual Defendants"), seeking relief for alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff contends that these violations stem from a series of unlawful actions, including a forcible strip search and two physical assaults, relating to his June 9, 2018 arrest for drug possession.

    Defendants City of New York and New York City Police Department have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that Plaintiff's complaint ("Compl.") does not state a claim upon which relief can be granted and that the NYPD cannot be sued. *See* Dkt. Nos. 3, 37. That motion is granted in part, denied in part.

## BACKGROUND

### I.  Parties

Plaintiff Javone Brown is an African-American male, residing in New York County. Compl. ¶ 16.

Defendants Officers John Doe #1-4, Jane Doe #1, and Sergeant John Doe #1 were at all relevant times employed by the NYPD. *Id.* at ¶¶ 11–13. On September 12, 2022, the Court denied Plaintiff's motion to amend the complaint to identify the Individual Defendants as futile, ordering that "[t]he only claims that will proceed are Plaintiff's claims against New York City, which was timely sued under federal law." *See* Dkt. No. 36. Unfortunately, the Court neglected to formally dismiss the complaint as against the Individual Defendants. It corrects that omission here, and respectfully directs the Clerk of Court to terminate the Individual Defendants as parties to this matter.

Defendant City of New York is a municipal entity that maintains the New York City Police Department. Compl. ¶ 9. Plaintiff has sued the City under a theory of municipal liability for the actions of the NYPD and the Individual Defendants. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiff has separately sued the NYPD as the City's agent in the area of law enforcement. Plaintiff's claims against the NYPD are dismissed because the NYPD is a non-suable entity. N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see also Paige-El v. Herbert*, 735 Fed. Appx. 753, 755 (2d Cir. 2018); *Singleton v. Bragg*, No. 23-cv-701, 2023 WL

2457707, at *2 (S.D.N.Y. Mar. 10, 2023). The Clerk of Court is respectfully directed to terminate the NYPD as party to this matter.

## II. Factual Allegations

On the evening of June 9, 2018, Plaintiff was a passenger in a friend's car. Compl. ¶ 17. At approximately 10:00 p.m., the car carrying Plaintiff was stopped by the Individual Defendants at the corner of 9th Street and Avenue D in Manhattan. *Id.* Plaintiff was directed by the officers to step out of the vehicle. *Id.* at ¶ 18. When Plaintiff asked for a reason, he was advised that there was an outstanding warrant for his arrest. *Id.* There was no such warrant. *Id.* Plaintiff was subsequently detained and arrested by the Individual Defendants. *Id.*

During the course of the arrest, the Individual Defendants physically assaulted Plaintiff. *Id.* at ¶ 19. Plaintiff was punched, kicked, and stepped on multiple times by the arresting officers. *Id.* As a result of the assault, Plaintiff sustained substantial and serious bodily injury, including trauma to his chest, ribs, and right hand. *Id.*

Following the arrest and while in police custody, Plaintiff was forcibly strip searched and anally probed. *Id.* at ¶ 21. After the searches, several officers entered into Plaintiff's cell, removed their body cameras, and physically assaulted Plaintiff a second time. *Id.* at ¶ 22. Plaintiff's injuries were so severe that an ambulance was required to take him to the hospital so that he could receive medical attention. *Id.* As a result, Plaintiff suffered a litany of physical, emotional, and financial injuries, including pain and suffering, mental anguish, shock, fright, physical pain, humiliation, and embarrassment. *Id.* at ¶ 24.

Plaintiff later pleaded guilty to possession of drugs discovered in the course of the search and seizure described above. *Id.* at ¶ 23.

### III. Procedural Background

Plaintiff commenced the instant action on December 28, 2020, alleging four separate claims under 42 U.S.C. §§ 1983, 1988: unlawful search and seizure, excessive force, deprivation of liberty, and violation of equal protection. *See* Dkt. No. 3. On July 27, 2022, Plaintiff filed a letter motion seeking an extension of time to file an amended complaint, which this Court denied as futile. *See* Dkt. Nos. 34, 36. On November 2, 2022, the City and NYPD filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Dkt. Nos. 37–39.

## STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Patel v. Contemporary Classics*, 259 F.3d 123, 126 (2d Cir. 2001)). In deciding such a motion, a court presumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the pleader. *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).

To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*,

550 U.S. at 556). The complaint "does not need detailed factual allegations," but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 556 U.S. at 680.

## DISCUSSION

### I. The Court May Consider Plaintiff's Medical Records in Ruling on the Instant Motion, But Properly Disregards Other Facts Alleged in Plaintiff's Opposition Brief

Plaintiff presents three exhibits affixed to his Opposition Brief ("Opp."): first, a spreadsheet of the NYPD's Misconduct Complaint Database relating to the 9th Precinct for 2006 – 2018; second, a news article concerning limited access to disciplinary records; and third, Plaintiff's medical records pertaining to his treatment post-arrest. *See* Dkt. Nos. 47, 47-2, 47-3, 47-4. This evidence, Plaintiff contends, demonstrates an "illegal predilection [for racial profiling] that has now been settled as a pattern, a widespread custom that Defendants are undeniably aware of." Opp. 5. It further "proves that racially motivated stops, arrests, and abuse of authority incidents are the 'de facto' rule for the NYPD," and that "Defendants [City and NYPD] condone the illegal activity of their employees" by failing to reprimand bad actors. *Id.* at 6.

In their Reply Brief, Defendants ask that these exhibits be ignored by the Court because they were not attached to, referenced in, or otherwise integral to the complaint, and because Plaintiff may not amend his complaint via extrinsic evidence submitted, for the first time, in opposition to Defendant's motion. *See* Dkt. No. 51 at 1–3; *see also Jennings v. Hunt Cos.*, 367 F.

Supp. 3d 66, 70–71 (S.D.N.Y. 2019) (collecting cases) (confirming that plaintiffs may not amend their complaints via briefing on a motion).

Whether Plaintiff's exhibits are properly considered by the Court comes prior to any assessment of their validity. When ruling on a 12(c) motion, a court is tasked with assessing whether the contents of the pleadings are sufficient to rendering judgment on the merits. *See* Fed. R. Civ. P. 7(a), 12(c). It considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). For the reasons that follow, the Court will disregard the spreadsheet of police misconduct ("Exhibit 1") and news article ("Exhibit 2") but will consider Plaintiff's medical records (left untitled on the docket, hereinafter "Exhibit 3") when ruling on the instant motion.

"A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). Although Plaintiff neglected to file his medical records when initiating the case, Exhibit 3 merits consideration by the Court as integral to the pleading. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 377 (S.D.N.Y. 2021) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). "Typically, an integral matter is a contract, agreement, or other document essential to the litigation." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019). As Plaintiff's medical records are vital to assessing any damages Plaintiff might claim to his person, they are essential to the litigation, integral to the pleading, and properly considered by the Court.

The same, however, cannot be said for Exhibits 1 or 2. The complaint's references to "constitutional abuses and violations" by Defendants City and NYPD, while possible to substantiate from the proffered factual allegations, do not turn on the presentation of these documents. Compl. ¶ 29. Additionally, neither Exhibit 1 nor 2 was incorporated by reference in the complaint. "A document is incorporated by reference where the complaint 'make[s] a clear, definite and substantial reference' to it." *Buari*, 530 F. Supp. 3d at 376–77 (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275–76 (S.D.N.Y. 2002)). Plaintiff's complaint makes no reference to either Exhibit 1 or 2—let alone a clear, definite, or substantial one. Moreover, it is evident that Plaintiff did not contemplate or rely upon either exhibit—foreclosing the possibility that they be properly considered by the Court as background material. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). These documents are evidence, pure and simple—to be considered on a motion for summary judgment but not on a motion to dismiss.

## II. The Motion for Judgment on the Pleadings Is Otherwise Denied Because Plaintiff Alleges Facts Sufficient to State a *Monell* Claim Against the City

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). Local governments only exercise power "possessed by virtue of state law," and thus act by definition under color of state law. *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). As such, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through

the government's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. These constitutional deprivations must be directly caused by the actions of the municipality, whether official or customary. *Id.* at 691–92; *see also Amnesty America v. Town of West Hartford*, 362 F.3d 113, 135 (2d Cir. 2004).

Municipalities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Buari*, 530 F. Supp. 3d at 397. To state a claim under § 1983 against the City, Plaintiff must plead sufficient facts that demonstrate "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see also Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). Plaintiff need not sue any individual tortfeasors for there to be a finding of municipal liability, as long as he can "plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality." *Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013); *see also Small v. City of New York*, No. 9-cv-1912, 2022 WL 1261739, at *12 (S.D.N.Y. Apr. 28, 2022).

Plaintiff has elected to satisfy the "'policy, custom or practice' requirement" for *Monell* liability in two ways: first, by alleging "a failure of policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees;" and second, by alleging "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Brandon*, 705 F. Supp. 2d at 276; *see also Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016). These allegations will be assessed in turn.

### a. Failure to Train

Plaintiff has plausibly pleaded facts sufficient to establishing a failure of policymakers to provide adequate training or supervision to their subordinates. A municipality may be held liable under § 1983 for constitutional violations resulting from its failure to train its police when the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To plead deliberate indifference, Plaintiff must allege that: (1) a policymaker knows to a moral certainty that her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Jones v. City of New York*, No. 13-cv-929, 2016 WL 1322443, at *8 (S.D.N.Y. Mar. 31, 2016) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)) (quotation marks omitted).

Plaintiff has met this burden. City policymakers are well aware that their police officers routinely confront situations of the type Plaintiff alleges, that these situations clearly present officers with difficult choices of the sort that training and adequate supervision would make less difficult, and that the wrong choices by officers will frequently cause the deprivation of a citizen's constitutional rights. *Cf. Harris*, 489 U.S. at 390 n.10. Of course, merely stating that the municipality's failure to train caused Plaintiff's constitutional injuries does not suffice. *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012); *see also Simms v. City of New York*, 480 Fed. Appx. 627, 631 n.4 (2d Cir. 2012). Plaintiff cannot be expected to identify with precision the various deficiencies in the City's training program prior to discovery. Asking him to do so now would defeat the purpose of having a failure to train theory of *Monell* liability. Here, Plaintiff

alleges no fewer than seven separate violations of his constitutional rights during the course of a single arrest. That plausibly suggests a failure to train. Therefore, Plaintiff may go forward on a failure to train theory.

### b. Unwritten Custom or Persistent Pattern

Plaintiff has also plausibly pleaded facts sufficient to establishing an unwritten custom or persistent pattern of civil rights violations. Shorn of any conclusory material, the complaint contains numerous allegations of seriously objectionable conduct: a racially-motivated traffic stop, unlawful arrest without reasonable suspicion, impermissible searches, and multiple attacks on Plaintiff's person. Compl. ¶¶ 17–19. "To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled." *Tieman v. City of Newburgh*, No. 13-cv-4178, 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015). Additionally, "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Jones*, 182 F. Supp. 3d at 159 ("A *Monell* claim cannot go forward based on . . . claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice.") (quoting *Pittman v. City of New York*, No. 14-cv-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014)).

Plaintiff attempts to answer this charge in the Opposition Brief, arguing that the original traffic stop constitutes "a practice of racial profiling . . . against which Defendants have a clear standard policy and custom," Opp. 4, and that "[s]tatistical evidence proves that racially motivated stops, arrests, and abuse of authority incidents are the 'de facto' rule for the NYPD." *Id.* at 6. Of course, merely positing the existence of a de facto policy of "unlawfully interfering with and/or using excessive force against [i]ndividuals" does not make it so. Compl. ¶ 31. And recourse to

statistical data, while potentially useful, cannot factor into this analysis for the reasons already discussed. *See supra* Section I. But Plaintiff has not alleged just a mere single incident of municipal employees violating his constitutional rights; he has alleged (by this Court's estimation) no fewer than seven separate violations, conducted by multiple municipal employees, from which municipal liability can be plausibly inferred.

It remains to be seen whether City policymakers truly have the policy Plaintiff contends, or whether they are actually indifferent to the alleged constitutional violations taking place under their watch. But we are not at present dealing with the merits, simply the pleadings. And at this stage, Plaintiff has sufficiently alleged a *Monell* claim against the City to survive dismissal.

## CONCLUSION

For the reasons set forth above, the City of New York and New York City Police Department's motion for judgment on the pleadings is granted in part and denied in part.

The Clerk of the Court is respectfully directed to terminate the Individual Defendants and the New York City Police Department as parties to this action and to remove the motion at Dkt. No. 37 from the Court's list of pending motions. Plaintiff Javone Brown's claims against the City of New York will proceed.

This constitutes the decision and order of the Court. It is a written opinion.

Dated: June 14, 2023

*[signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL